

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-29-2008

# Wang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4654

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Wang v. Atty Gen USA" (2008). *2008 Decisions.* Paper 310.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/310

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-4654
_____

QUINGLIN WANG,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A200-032-277)
Immigration Judge:  Honorable Margaret R. Reichenberg

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 15, 2008

Before:  RENDELL, GREENBERG and VAN ANTWERPEN, Circuit Judges

(Filed: October 29, 2008)
_____

OPINION OF THE COURT
_____

PER CURIAM

    Quinglin Wang petitions for review of an order by the Board of Immigration

Appeals ("BIA") affirming the Immigration Judge's final order of removal.  For the

following reasons, we will deny the petition for review.

I.

Wang, a citizen of China, arrived in the United States in July 2005. Soon thereafter, Wang was served with a Notice to Appear charging him with being present in the United States without having been admitted or paroled. See INA § 212(a)(6)(A)(i) [8 U.S.C. § 1182(a)(6)(A)(i)]. In response, Wang applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), claiming that he had been persecuted in China on account of his Christian faith.

In his application, Wang stated that he became interested in Christianity in 2002, when a stranger at a bookstore took him aside and gave him a copy of the Bible. (A.R. 000262.) Wang explained that, after reading the Bible, he began attending church to learn more about Christianity. (Id. at 000263.) He initially attended certain government-controlled churches, but soon discovered that the government forced the clergymen in their churches to distort the meaning of the Bible in order to promote an anti-Christian agenda. (Id.) As a result, Wang decided to join an underground Christian church (a "family church") instead. (Id.)

Wang further stated that, in March 2005, while he was attending services at a family church, five policemen disrupted the gathering. (Id.) The police confiscated the group's Bibles and took everyone to the police station for interrogation. (Id.) Wang stated that, when he refused to answer certain questions, the police beat him and kicked

2

him.  (Id.)  Wang spent the night at the station without food, water, or a blanket, and, the following day, was forced to stamp his fingerprint upon a document agreeing to give up his faith.  (Id.)  According to Wang, the police also ordered him to provide the names and addresses of members of the church who were absent on the day of the raid.  (Id.)  He initially refused, and was beaten again.  (Id.)  Although Wang's statement is not entirely clear on this point, it appears that he then agreed to provide the names and addresses of some members, but not others.  (Id. at 000264)  Wang stated that he was released later that evening and warned not to attend any more family churches.  Wang stated that he feared returning to China because he "failed to do what the police told [him]."  (Id.)

On June 12, 2006, Wang appeared for a removal hearing before Immigration Judge ("IJ") Margaret R. Reichenberg.  At the hearing, Wang testified about his membership in the Christian church and described the events surrounding his arrest in March 2005.  The IJ, however, found Wang's testimony incredible, and denied relief.  IJ Reichenberg described Wang as a very poor witness and noted that he frequently hesitated and struggled to provide answers to the questions presented.  The IJ also found that there were a number of inconsistencies within his testimony as well as between his testimony and the statement accompanying his application.

Upon review, the BIA found no clear error in the IJ's adverse credibility determination, and, by order entered November 29, 2007, affirmed the IJ's denial of Wang's applications for asylum, withholding of removal, and protection under the CAT.

3

The present petition for review followed.

## II.

We have jurisdiction to review the BIA's order of removal under 8 U.S.C. § 1252(a)(1). When, as in this case, the BIA substantially relies on the findings of the IJ, we review the decisions of both the BIA and the IJ. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). We review these findings, including any credibility determinations, under a substantial evidence standard. See Cao v. Att'y Gen., 407 F.3d 146, 152 (3d Cir. 2005). An adverse credibility finding must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." Berishaj v. Ashcroft, 378 F.3d 314, 322 (3d Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)). Because Wang filed his application for relief after the enactment of the REAL ID Act of 2005, the BIA's credibility determinations are governed by the Act. See Chukwu v. Att'y Gen., 484 F.3d 185, 189 (3d Cir. 2007). Under the REAL ID Act, an IJ may base her credibility determination on observations of the applicant's demeanor, the plausibility of the applicant's story, and on the consistency of the applicant's statements. See INA § 208(b)(1)(B)(iii); Gabuniya v. Att'y Gen., 463 F.3d 316, 322 n.7 (3d Cir. 2006).

Upon review, we are satisfied that substantial evidence supports the BIA's and IJ's adverse credibility determinations. First, as the BIA and IJ explained, there were several discrepancies between Wang's application and his testimony at the removal hearing. For instance, while Wang's application stated that he was beaten twice during his detention in

4

March 2005 (A.R. 000263), when he recounted the incident at the hearing, he mentioned only one beating. (A.R. 000149-156.) When confronted with this inconsistency, Wang changed his testimony and added that he was, in fact, beaten a second time. (A.R. 00157-159.) Similarly, whereas Wang's application stated that he attended government-controlled churches before joining his family church (A.R. 000263), he testified at the hearing that the only church he attended was his family church, the Xin Xin church. (A.R. 000119-120.)

The BIA also pointed to inconsistencies within Wang's testimony on the day of the hearing. For example, Wang initially testified that seven or eight other members of the church were arrested with him in the March 2005 raid (A.R. 000114), but later stated that there were only six others. (A.R. 000126.) In addition, although he first told the court that police had visited his home "very frequently, four or five, four—three or four times" after his arrest (A.R. 000129), he later testified that they came only twice. (A.R. 00134.) Wang also testified at the hearing that his mother was summoned to the police station on April 19, 2005, and stated that he was no longer in the country at that time. (A.R. 000137.) When the government pointed out to him that he did not leave China until May 2005, he changed his story and added, for the first time, that he had gone into hiding for a period prior to leaving the country. (A.R. 000138.)

In light of these inconsistencies, and deferring to the IJ's findings about Wang's demeanor, we cannot conclude that "any reasonable adjudicator would be compelled" to

5

disagree with the BIA's and IJ's adverse credibility determinations.  <u>See</u> 8 U.S.C. §

1252(b)(4)(B).  Thus, we agree that Wang failed to establish eligibility for asylum under

8 U.S.C. § 1101(a)(42)(A).  Given that Wang's claims for withholding of removal and

relief under the CAT were based on the same evidence as his asylum claim, we conclude

that substantial evidence supports the denial of these claims as well.

III.

Accordingly, for the reasons set forth above, we will deny the petition for review.